[No. 21496. Department Two. October 29, 1929.]

F. D. KELLISON, *Respondent,* v. P. R. GODFREY *et al., Defendants,* ARTHUR E. BUSSE *et al., Appellants,* CENTRAL LUMBER & SUPPLY COMPANY, *Respondent,* FREDERICK BOYD COMPANY, *Respondent.*[1]

[1]Reported in 281 Pac. 733.

*Rummens & Griffin,* for appellants.

*C. H. Winders,* for respondent Frederick Boyd Co.

*Herr, Bayley, Croson & Innis,* for respondent Central Lumber & Supply Co.

MILLARD, J.—From judgment of foreclosure establishing lien claims of materialmen, the defendant owners have appealed.

In the early part of 1927, P. R. Godfrey commenced the erection of a number of dwelling houses upon lots owned by him in Seattle. He contracted with the Central Lumber & Supply Company for rough lumber and with the Frederick Boyd Company for mill work to be used in such construction. On May 28, 1927, prior to the completion of any of the houses, Godfrey entered into a real estate agreement for the sale of one of the houses—one of brick construction designated as 2911 Eleventh avenue west—to Arthur E. Busse and wife. The Busses received a deed to the property June 23, 1927, having paid the full purchase price of the property to Godfrey upon his representations to them that the property was free and clear from all liens and incumbrances; that all claims and accounts for lumber and supplies furnished in connection with the construction of the house had been paid. The deed was recorded July 13, 1927. On August 1, 1927, the Busses

moved into their new home. They testified that at that time the house was fully completed except for exterior stucco work which was performed by F. D. Kellison.

On August 1, 1927, another of Godfrey's houses, a frame house, was in the course of construction. It was numbered 2907 Eleventh avenue west, and was situated on the lot adjoining that on which the Busses' house was located. The frame house was never completed. Claiming liens for supplying construction material delivered at 2911 Eleventh avenue west, the two lumber companies filed statutory notice of lien against that property October 20, 1927, in compliance with Rem. Comp. Stat., § 1134. The court's findings of fact recite, substantially, that the two lien claimants made deliveries at 2911 Eleventh avenue west, as alleged, and that the material was, in each instance, delivered on the premises pursuant to Godfrey's representations that the material was to be used in the construction of the dwelling house No. 2911 Eleventh avenue west.

The liens of the two companies were decreed prior liens against the property. Judgment was entered in favor of the Busses against Godfrey in the aggregate amount of the judgments in favor of the lien claimants, based upon the ground of Godfrey's obtaining from the Busses by false representations the full purchase price of the property.

No question is raised as to the judgment in favor of Kellison, appellants conceding in this court, as they admitted in the court below, that the lien of respondent Kellison for labor in exterior stucco work was properly established. The appellants assign as error the establishing of the liens of Frederick Boyd Company and Central Lumber & Supply Company and entering judgments thereon.

First considering the claim of respondent Boyd Company, it is noted that the trial court struck cer-

tain portions of the statement of facts and accepted respondent's amendments, with the result that the evidence now before us, consisting of the testimony of respondent's president and truck driver and the ledger sheets, shipping tickets and receipts signed by Godfrey's employees, establishes delivery of the respondent's material to 2911 Eleventh avenue west. There was no testimony contradicting delivery.

Respondent commenced, May 5, 1927, to supply the construction material, and made its last delivery at 2911 Eleventh avenue west, August 20, 1927. Having filed its notice of lien October 20, 1927, respondent complied with Rem. Comp. Stat., § 1134.

"No lien created by this chapter shall exist, and no action to enforce the same shall be maintained, unless within ninety days from the date of the cessation of the performance of such labor or of the furnishing of such materials, a claim for such lien shall be filed for record as hereinafter provided, . . . "

Respondent agreed to give Godfrey a discount of ten per cent in consideration of receiving a contract for the mill work and finishing material required for the twenty-five houses Godfrey contemplated erecting. Mr. Boyd, respondent's president, testified that the material (mill work, sash, doors and other finishing material) for which a lien is claimed, was manufactured for the dwelling house at 2911 Eleventh avenue west on the order of Mr. Godfrey, who directed delivery to those premises.

Respondent's truck driver testified that all of the articles shown on the delivery orders were delivered to house No. 2911. That the materials were so delivered, is evidenced by the signatures of Godfrey's employees on the delivery receipts. The driver noticed, when making a delivery on August 1, that some one

was moving into the house, and also remembered that he delivered a second ironing board,

" . . . which was delivered on the premises at 2911 Eleventh avenue west; someone connected with the contractor told me that the ironing board was to be taken to another house. However, I left it at 2911 Eleventh avenue west. I said nothing about what was told to me to any of the officers of the defendant (cross-complainant Boyd Company)."

When, for the first time, it was learned at the trial that the driver had left a second ironing board at house No. 2911, the respondent eliminated that item from the lien claim. The four ledger sheets of respondent disclose that materials were charged to contractor Godfrey in a general account for several houses under construction. The only items listed on the ledger sheets are house numbers and the charge against each placed on the same line in the opposite right hand column, the date of delivery of each consignment of material being entered in the column to the left and on the same line as the house number. From this it appears that materials for a number of houses were supplied to Godfrey; in fact, respondent's president testified that his company had furnished material for about a dozen other houses for Godfrey.

The house contiguous to 2911 was numbered 2907 Eleventh avenue west. It was under construction by Godfrey for a Mrs. George, who testified that, when the appellants moved into their home August 1, the inside of appellants' house was completed, but that the work of finishing house No. 2907 was still under way. Mrs. George did not testify, neither did anyone else, as to the delivery of any material to house No. 2907. Mrs. George, on cross-examination, testified that her house, No. 2907, was never completed; that she lived a considerable distance from appellants' house, and, in

fact, about all she remembered was when "the Busses moved into their house" August 1.

It is respondent's position, that, having manufactured the materials covered by the lien, under specific orders from the contractor, and delivered it in good faith on the premises, it is not necessary to trace the material into the structure to support the lien.

Appellants insist that the last three deliveries (July 20, August 1, and August 20 of materials sold July 19, July 28 and August 5, respectively) by respondent, if made at all, were of inside finishing materials sold subsequent to the purchase of house No. 2911 by appellants; that the inside finishing materials listed in the lien account which house No. 2911 required had been furnished and placed therein prior to August 1; therefore, the lien having been filed October 20, the last day upon which it could support a delivery of material was not earlier than July 22. Appellants further argue that the house at 2911 was completed and the material could not have been used in that house, and that the house next door, No. 2907, was incomplete and therefore the material was intended for No. 2907; that

"  . . . if the lien could be established by delivery alone to this house, without segregation, then all deliveries for the twenty-five houses might have been made and this house burdened with a lien for the twenty-five houses. Yet, it will be conceded, if delivery was made to this house for another house and left there for convenience and at the order of the contractor or owner, the lien would lie against the house for which the material was prepared, and where it was used. And if a lien lie in the latter case, surely it does not in the former."

Pursuant to its contract with Godfrey to supply finishing material for twenty-five houses, respondent furnished material for twelve or thirteen houses. The

material for which lien is claimed was ordered by Godfrey for use in the construction of the house at 2911 Eleventh avenue west. The material was delivered to house No. 2911, and, within the statutory time following the last delivery, lien notice was filed. The house at 2911 Eleventh avenue west was completed and occupied on or before August 1. The material claimed to have been ordered for, and delivered to, that house was not capable of being incorporated in that building. The materials sold by respondent were charged to the contractor in a general account and delivered to the different houses under construction.

The material respondent claimed to have furnished for use in the building against which a lien is sought, was not capable of being incorporated in the structure at the time of delivery of the material on the premises, by reason of the fact that the house was then fully completed. Under the facts, respondent is not entitled to a lien under Rem. Comp. Stat., § 1129, providing that

"Every person . . . furnishing material to be used in the construction, . . . of any . . . building, . . . has a lien upon the same for the . . . material furnished, . . ."

as the respondent did not in fact furnish material, for which lien is claimed, to be used in the construction of such building. To hold otherwise, would be to permit a lien claimant to enforce a lien upon one building for material that was used in the construction of another building.

*Huttig Bros. Mfg. Co. v. Denny Hotel Co.,* 6 Wash. 122, 32 Pac. 1073, is not in point. In that case, the materials were specially designed for a certain building and furnished the contractor therefor. We held that a lien could be enforced for the whole amount furnished, although only a portion had been used in the

construction in consequence of the contractor having suspended work on the building. The materials were not used because of the contractor's fault. In the case at bar, the material was not specially designed for house No. 2911. The materialman in the case cited was not supplying material to a number of houses and seeking to enforce a lien against only one of the buildings for a part of the material furnished. To review all of the authorities cited in support of the respective positions of appellants and respondent, would unnecessarily extend this opinion. We have carefully read those authorities from which the case at bar is distinguishable on the facts.

On March 23, 1927, the Central Lumber & Supply Company commenced delivery of lumber for the Godfrey houses. The respondent claims the last delivery at No. 2911 Eleventh avenue west was made July 23, 1927. Appellants argue that the last delivery immediately preceding the alleged delivery of July 23 was the one of June 11, 1927, upon which the lien filed could not be based; that the claimed delivery of July 23 was never in fact made; that the delivery slip for July 23 shows that the material was delivered to No. 2907 Eleventh avenue west. The truck driver testified on direct examination that he made the delivery July 23 to house No. 2911. His testimony on cross-examination is as follows:

"Q. And that is how you know that delivery was made to this particular house because of the address on the invoice? A. Yes. Q. Now, calling your attention to the Exhibits 2 and 3, and particularly the delivery of July 23, being the invoice 20309, I call your attention to the fact that it has upon it 'Del. to 2907 11th West.' A. Yes. Q. Written instead of 11th W. & Fulton? A. Yes. Q. Now, whose writing is 11th W. & Fulton? A. The bookkeeper's. Q. And where was it made? A. At the office. Q. So,

when you took out this material it was to be delivered at 2907 11th West? A. Evidently. Q. And thereafter the bookkeeper made the change upon the invoice. A. It looks that way. Q. You don't remember anything about the delivery personally? A. No.''

The invoice, or delivery slip, No. 20309, bears date of July 23, 1927. On the carbon copy of the invoice, appears ''Del'd to 2907 11 W.'' Lines have been drawn through that address, which was changed with a black lead pencil to read, ''11 W & Fulton.'' The other writing on the slip indicates that blue carbon paper was used in making the copy. An examination of the original delivery slip No. 20309 discloses that black lead pencil was used in making the correction of address, as well as in listing the articles thereon. On the line showing point of delivery, appears ''Del'd to 2911 - 11 W.'' It is clear that ''2907 - 11 W.'' was changed to ''2911 - 11 W.'' A carbon copy and the original of each of the fifteen delivery slips covering deliveries from March 23, 1927, to July 23, 1927, are attached to the statement of facts. On each carbon copy, with the exception of two, the deliveries are shown to have been made at ''11 W & Fulton.'' On slip No. 20309 a correction was made as described above. On slip No. 19956 of July 1, 1927, delivery is indicated at ''2911 - 11 W.'' An inspection of the original of each of the fifteen delivery slips shows the following:

No. 19956, July 1, 1927, ''Del'd to 2911 - 11 W.'' No. 20309, July 23, 1927, ''Del'd to 2911 - 11 W.'' ''2907'' was changed to ''2911.''

Eleven of the delivery slips, from March 23, 1927, to June 18, 1927, ''Del'd to 11 W & Fulton.'' Underneath appears ''2911.'' No. 19801, June 22, 1927, ''Del'd to 11 W & Fulton.'' Underneath the delivery line appears ''2911'' and ''2907'' from which numbers lines lead to items described in the body of the

bill from which it is concluded that one item of lumber is to be delivered at 2911 Eleventh avenue west and two items at 2907 Eleventh avenue west.

No. 18473, March 31, 1927, "Del'd to 11 W. & Fulton." On line below is written "2835" and "2911," from which it would appear that one item of lumber is to be delivered at 2835 and one item at 2911 Eleventh avenue west.

The burden of proving delivery of the material to the house No. 2911 was upon respondent; it has not sustained that burden. The original and carbon copies of delivery slip No. 20309, showing delivery July 23, 1927, are confusing. When was the carbon copy corrected to show delivery at 2911 instead of at 2907 Eleventh avenue west? Was the correction made prior to delivery of the material and signing of the receipt by Godfrey's employees, or was the address changed subsequent to delivery? The carbon copy has been corrected from "2907 Eleventh avenue west" to "11th West & Fulton," while the original delivery slip was changed from 2907 Eleventh avenue west to 2911 Eleventh west. Were the materials delivered at 2907 or at 2911? Respondent has not proved delivery of the material July 23, 1927, to 2911 Eleventh avenue west. The last delivery immediately preceding the claimed delivery of July 23 was that of June 11, upon which the lien filed October 20, 1927, could not be based.

For reasons given, the judgment establishing the lien claims of respondents Frederick Boyd Company and Central Lumber & Supply Company is reversed.

MITCHELL, C. J., MAIN, and PARKER, JJ., concur.

FRENCH, J., concurs in the result.