[No. 20854.   Department Two.   March 20, 1928.]

PETRO PAINT MANUFACTURING COMPANY, *Respondent,* v. THOMAS L. TAYLOR *et al., Respondents,* PIONEER SAND & GRAVEL COMPANY, *Appellant.*[1]

[1] MECHANICS' LIENS (43)—NOTICE—TIME OF FILING—CESSATION OF WORK. Where, on a building contract, small items of materials were furnished at the request of the owner, not for the purpose of use in completing a building contract, but solely for the purpose of fixing a later date, such delivery of material will not restore a right of lien which was already lost by lapse of time.

[2] PLEADING (104)—AMENDMENT TO CONFORM TO PROOF. The statement of the court that it would take cognizance of the fraud of a lien claimant, whether pleaded or not, made at the time of a motion to amend the complaint, was a sufficient announcement that the pleadings would be deemed amended, if necessary.

Appeal from a judgment of the superior court for King county, Moriarty, J., entered June 2, 1927, upon findings in favor of the plaintiff, in an action to foreclose mechanics' liens, tried to the court.   Affirmed.

*Schwellenbach, Merrick & Macfarlane,* for appellant.

*Edwin C. Matthias, Paul & Long, Theodore D. Carlson,* and *Poe, Falknor, Falknor & Emory,* for respondents.

HOLCOMB, J.—This action was brought by respondent, Petro Paint Manufacturing Company, as plain-

[1]Reported in 265 Pac. 155.

tiff, to foreclose liens for material alleged to have been furnished respondent Taylor, who was then the owner of the premises, in the construction of five certain dwelling houses situated in King county. Appellant cross-complained to foreclose liens upon the same properties. One of the properties is not involved in this appeal. The other properties, properly described in the pleadings and findings, are referred to on appeal as house No. 1, house No. 2, house No. 3 and house No. 4.

Taylor was not only the owner of the premises in question at the time construction was begun, but was also in the general building business in Seattle. Construction was begun on at least one of the houses in February, 1926, it having been shown that appellant, Pioneer Sand & Gravel Company, delivered cement to that property on February 26. On April 9, 1926, it commenced to deliver cement on lot No. 3; on April 17 it commenced to deliver cement on lot No. 2; on April 24 it commenced to deliver cement on lot No. 4. On June 1, 1926, Taylor, the then owner, transferred the lots designated as 2, 3 and 4 to respondent Johnson. At that time, the houses were not quite completed, but Taylor agreed with Johnson that he would complete them. There remained only some patching up to be done in the houses, the garage floors, driveways and sidewalks to be constructed. Taylor had become considerably delinquent in his account with appellant, owing it at that time almost the entire amount found to be due it by the court, or nearly $784.07. Appellant had made several attempts to collect from Taylor, without success. On July 4, appellant caused the premises to be inspected by its agent to ascertain when the jobs would be completed, and sent word to Taylor to call at its office. Taylor called on appellant on July 6, stated that he was not able to pay the account, and

that he needed more material. He said that he could not get money until the houses were completed and asked for more time on his account. He then ordered two sacks of cement for each house, which were to be delivered to the premises, and for which, when delivered, he receipted himself. The cement was in fact delivered and thrown in a shed, at his request and for his convenience, and was not in fact delivered to or used in any of the properties. Taylor did nothing more to complete the work on the several properties, and the houses were finished by another for the owner.

Appellant is engaged in the business of selling sand, gravel and cement to builders. It is claimed that in February, 1926, before construction was begun on the five houses, an agreement was entered into between Taylor and appellant, whereby Taylor agreed to purchase the sand, gravel and cement needed by him in the construction of the five houses at prices then prevailing. Although Taylor may have made such an agreement, the record shows that he did not purchase from appellant all the sand, gravel and cement needed by him in the construction of the houses, but purchased portions thereof from two other concerns in Seattle. The others also attempted to extend time for filing liens by the later delivery of two sacks of cement to each house, and to foreclose liens thereon, which were denied by the court upon the same grounds.

It is claimed by appellant that, by reason of the contract above mentioned, there was one continuing entire contract between the parties which justified the filing of appellant's liens against the several premises within ninety days after July 6, 1926, or on September 15, 1926, when the liens were filed. The evidence, however, also discloses that all the work that was to be done in any of the five houses, which was very indefinite under the testimony of Taylor, was some insignifi-

cant patching up of basement floors to make them more level and to cover over some exposed rocks in the walls in some places. It is also shown that the walks, sidewalks and drives upon the grounds of each of the houses could not be constructed until a much later time on account of the condition of the street and the grounds as to grading. The two sacks of cement, ostensibly furnished by appellant for each house, were very insignificant in amount and in value. The amount would not be sufficient to construct any appreciable portion of the walks, sidewalks and drives which were at that time unconstructed. Nor did the contract between Taylor and appellant apparently cover sand, gravel and cement for walks, sidewalks and drives, but, as stated, referred only to the construction of the houses. In each of the lien claims filed by appellant against the premises involved, it was recited that the cement furnished was to be used in the dwelling house, and no mention was made of materials to be used for sidewalks and driveways. From the record it is to be noted that the last delivery of material by appellant to house No. 1 was one hundred and thirty days prior to the delivery of July 6; to house No. 2, eighty days prior to that delivery; to house No. 3, eighty-eight days prior to that delivery; and to house No. 4, seventy-three days.

After trial, the court gave appellant judgment against Taylor personally for the value of the material, but refused a decree of foreclosure on the ground that the deliveries of July 6 were not made in good faith, and that the lien notice had not been filed within ninety days after the last delivery. A motion for a new trial was made and denied. This appeal is from the decree of the court denying foreclosure.

Appellant urges as grounds for reversal of the decree of the trial court that the court erred in admitting

testimony showing or tending to show lack of good faith on the part of appellant; and erred in finding that the delivery of material on July 6 was not in good faith, but for the purpose of extending the time in which liens might be filed. The other errors assigned are comprehended within the two above mentioned.

It is urged by appellant:

(1)   That neither bad faith nor fraud was shown by the testimony.

(2)   That bad faith is not a defense where material is ordered by an owner or his agent.

(3)   That the material was delivered in accordance with the contract.

(4)   That the time for filing had not expired when the liens were filed.

(5)   That a change of ownership during the progress of the work does not affect one who has a contract for furnishing material.

(6)   That bad faith, as used in the decisions, is synonymous with fraud, and that fraud cannot be proved unless it is pleaded.

(7)   That the failure to name the wife of the record owner of community property in the lien notice is not material.

The trial court made findings, and among other things found that appellant delivered all the cement purported to be delivered at a shed on the lot here designated as No. 4. It also found that the delivery of July 6 was not made in good faith, only for use in the dwelling houses, nor pursuant to the original contract between the parties, but was made by appellant solely for the purpose of extending the time for filing its lien claims against the property.

Appellant cites precedents from this and other states to the effect that the temporary cessation of work where the design of the performance is not abandoned

and work is subsequently resumed and prosecuted without any substantial change .in the plan, will not prevent relation back of the lien to the time of the original commencement. *Bradley v. Donovan-Pattison Realty Co.*, 84 Wash. 654, 147 Pac. 421; *Rieflin v. Grafton*, 63 Wash. 387, 115 Pac. 851; *Osten v. Curtis*, 133 Wash. 360, 233 Pac. 643; *Mackintosh-Truman Lum. Co. v. Scott*, 135 Wash. 322, 237 Pac. 735; *Rose v. O'Reilly*, 138 Wash. 18, 244 Pac. 124.

It is the established rule in this state that findings of fact made by the trial court are to be considered as verities in support of the judgment rendered thereon, unless from the record it appears that they are contrary to the clear preponderance of the evidence. *Osten v. Curtis; Bradley v. Donovan-Pattison Realty Co.*, and *Rose v. O'Reilly, supra.*

The entire record has been examined with care and we are unable to find that the evidence preponderates against the findings of the trial court. On the contrary, we think they are amply supported by the evidence. We are now trying the case on appeal *de novo* on the record, but we are free to say that, if we were trying it in the first instance, we would arrive at the same result on the facts as did the trial court.

[1] While manifestly each case must depend upon its own record, and we have several times sustained judgments by the trial court upholding the good faith of a lienholder and refused to hold that there had been an abandonment or lack of continuity of the work under continuing contracts, as in the *Bradley v. Donovan-Pattison Realty Co., Osten v. Curtis*, and *Rose v. O'Reilly* cases, *supra,* we have also distinctly and positively held that, where a delay in the work did not justify it, the furnishing of insignificant items in order to stretch the time for filing a lien appears affirmatively from the record, such lien filed after the expiration of

ninety days from the last actual delivery of material, or performance of labor, will not sustain a judgment, or restore a right to a lien which had already been lost. *Gallatin v. Miller,* 139 Wash. 521, 247 Pac. 936. The same rule was recognized in *Rose v. O'Reilly, supra,* and in the *Bradley* case, *supra.*

Appellant contends that where, after a contract is substantially completed, a contractor does further work or furnishes material which is necessary for the proper performance of the contract and it is done in good faith at the request of the owner, or, in the case of a subcontractor, at the request of the contractor, or for the purpose of fully completing the contract and not merely for the purpose of fixing a later date, the period will commence to run from the doing of such work; citing 27 Cyc. 147, *Osten v. Curtis, supra,* and cases from other states.

But the evidence and logical deductions from the evidence in this case show that the small items of materials furnished by appellant on July 6, although at the request of the owner, were not made for the purpose of fully completing the contract, but merely for the purpose of fixing a later date. The materials were not in fact used at all in any kind of construction in or about the premises. They were not in fact delivered to any of the premises except *en masse* to one. They were obtained by Taylor, as he testified, for the purpose of obtaining further time for himself, which appellant well knew, and knew the necessity, either of obtaining payment of its accounts, or of extending the time in which to file its liens. It knew that Taylor could not pay his indebtedness, and knew that the time for filing liens had almost expired on several and had expired on one of the houses. The order for material was so insignificant in amount and value that it must inevitably have known that it was not ordered in good

faith for the purpose of completing the construction of whatever was left to be constructed on any one of the premises. Hence the latter part of the rule stated in Cyc. applies to appellant.

[2] Appellant also contends that good or bad faith, or fraud, was not an issue in this case, because not pleaded.

It is always incumbent upon a lien-claimant to show facts entitling it to recover under the lien statute. In order to do so, it is necessary for claimant to show that it had furnished material or performed labor which was necessary for the construction of the buildings in question within a stated period, and that within the statutory period from the furnishing of the last necessary item, it filed its statutory lien. This, appellant failed to do to the satisfaction of the trial court. Moreover, during the trial, while the evidence was being introduced tending to show bad faith or fraud between appellant and Taylor, respondents moved to amend their respective answers to conform to the facts, which they contended had shown fraud and bad faith, so as to allege fraud and bad faith. Although the court did not distinctly rule upon the motion to be allowed to amend, the court did state to counsel for appellant that, if it was convinced that the deliveries were made in such studied manner in the various instances and were not valid deliveries, it would be the duty of the court to take cognizance of that fact, regardless of whether or not fraud was pleaded.

That statement by the court was sufficient announcement of its position that the pleadings would be deemed amended, if necessary so to do.

Furthermore, it is a well-settled practice in this state that in equity cases, where the whole cause is before the court, all amendments to pleadings that could have been made will be deemed made in the court below.

*Bellingham Bay Land Co. v. Dibble,* 4 Wash. 764, 31
Pac. 30; *Helphrey v. Strobach,* 13 Wash. 128, 42 Pac.
537; *Rose v. O'Reilly, supra.* In the last case a most
material amendment was made at trial.

The decree is affirmed.

MACKINTOSH, C. J., FULLERTON, MAIN, and ASKREN,
JJ., concur.